Approved: _____
Ryan B. Finkel
Assistant United States Attorney

Before:   HONORABLE DEBRA FREEMAN
          United States Magistrate Judge
          Southern District of New York

19MAG 4946

- - - - - - - - - - - - - - - - - x
                                   :   **SEALED COMPLAINT**
UNITED STATES OF AMERICA           :
                                   :
          - v. -                   :   Violations of
                                   :   18 U.S.C. §§ 371, 1028A,
GUNJIT MALHOTRA,                   :   1349, and 2
GURJEET SINGH, and                 :
JAS PAL                            :   COUNTIES OF OFFENSE:
                                   :   BRONX, NEW YORK
          Defendants.              :
                                   :
- - - - - - - - - - - - - - - - - x

SOUTHERN DISTRICT OF NEW YORK, ss.:

CARIE JELENIEWSKI, being duly sworn, deposes and says that she is a Special Agent with the Federal Bureau of Investigation ("FBI") and charges as follows:

**COUNT ONE**
(Conspiracy to Commit Mail Fraud)

1.  From at least in or about 2013 up to and including in or about May 2019, in the Southern District of New York and elsewhere, GUNJIT MALHOTRA, GURJEET SINGH, and JAS PAL, the defendants, and others known and unknown, willfully and knowingly did combine, conspire, confederate, and agree together and with each other to commit mail fraud in violation of Title 18, United States Code, Section 1341.

2.  It was a part and object of the conspiracy that GUNJIT MALHOTRA, GURJEET SINGH, and JAS PAL, the defendants, and others known and unknown, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations and promises, for the purpose of executing such scheme and artifice and attempting so to do, would and did place in a post office and authorized depository

for mail matter, matters and things to be sent and delivered by the Postal Service, and did deposit and cause to be deposited matters and things to be sent and delivered by private and commercial interstate carriers, and would and did take and receive therefrom, such matters and things, and would and did knowingly cause to be delivered by mail and such carriers according to the directions thereon, and at the places at which they were directed to be delivered by the person to whom they were addressed, such matters and things, in violation of Title 18, United States Code, Section 1341.

(Title 18, United States Code, Section 1349.)

## COUNT TWO
(Conspiracy to Access a Protected Computer in Furtherance of Fraud)

3. From at least in or about 2013 up to and including in or about May 2019, in the Southern District of New York and elsewhere, GUNJIT MALHOTRA, GURJEET SINGH, and JAS PAL, the defendants, and others known and unknown, willfully and knowingly did combine, conspire, confederate, and agree together and with each other to commit an offense against the United States, to wit, to violate Title 18, United States Code, Section 1030(a)(4).

4. It was a part and an object of the conspiracy that GUNJIT MALHOTRA, GURJEET SINGH, and JAS PAL, the defendants, and others known and unknown, did knowingly and with intent to defraud access a protected computer without authorization and exceed their authorized access and by means of such conduct furthered the intended fraud and obtained something of value in violation of Title 18, United States Code, Section 1030(a)(4).

Overt Act

5. In furtherance of said conspiracy and to effect its illegal object, the following overt act, among others, was committed in the Southern District of New York and elsewhere:

a. On or about November 20, 2018, GUNJIT MALHOTRA, GURJEET SINGH, and JAS PAL, the defendants, and others known and unknown, caused an individual's computer to malfunction so that the individual would call a particular phone number and be induced to purchase fraudulent computer repair services.

(Title 18, United States Code, Section 371.)

## COUNT THREE
(Aggravated Identity Theft)

6. From at least in or about 2013 up to and including in or about May 2019, in the Southern District of New York and elsewhere, GURJEET SINGH, the defendant, knowingly did transfer, possess, and use, without lawful authority, a means of identification of another person, during and in relation to a felony violation enumerated in Title 18, United States Code, Section 1028A(c), to wit, SINGH used the name of another individual during and in relation to the felony violation charged in Count One this Complaint.

(Title 18, United States Code, Sections 1028A(a)(1), 1028A(b), and 2.)

The bases for my knowledge and for the foregoing charges are, in part, as follows:

7. I am a Special Agent with the FBI, and I have been personally involved in the investigation of this matter. This affidavit is based in part upon my conversations with law enforcement agents and others and my examination of reports and records. Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all of the facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

### Overview

8. Based on my review of documents, conversations with victims and conversations with law enforcement officers, I believe that GUNJIT MALHOTRA, GURJEET SINGH, and JAS PAL, the defendants, and others known and unknown, have for several years engaged in a scheme in which they and their coconspirators purport to provide computer repair services to victims located throughout the United States, many of whom are elderly. In connection therewith, the defendants and their coconspirators convey false and misleading information to their victims to extract payment for computer repair services. For example, the defendants and their coconspirators claim: (i) to be associated with major technology software companies when, in fact, they are not; (ii) to provide computer services when none are in fact

3

provided; and (iii) that computer repair services are needed when that is false. The defendants and their coconspirators have established several companies to carry out their scheme and in so doing have lured their victims to send payments to their companies via private and commercial interstate mail carrier, among other methods. In total, the defendants and their coconspirators have obtained from their victims more than $1,300,000.

## Victims

9. Based on my review of documents, conversations with victims and conversations with law enforcement officers, I have learned the following, in substance and in part:

      a. In or around March 2018, Victim-1 reported to law enforcement officers that after her personal computer ("Computer-1") became dysfunctional, a message appeared on the screen directing Victim-1 to contact a particular phone number ("Phone Number-1") for repairs. Victim-1 reported to law enforcement officers that she called Phone Number-1, and was connected to someone who claimed to be from "[Tech Company-1] Firewall," where Tech Company-1 is a well-known technology company with an international presence. The individual on the phone informed Victim-1 that additional security was needed on Computer-1 and that a private commercial carrier of mail ("Carrier-1") would pick up from Victim-1's New Jersey residence a check in the amount of approximately $662.99 ("Check-1") made payable to a company known as "22nd Century ITC." Victim-1 further reported that then someone remotely took control over Computer-1 and purported to repair it.

          i. Victim-1 authorized law enforcement officers to inspect Computer-1. Law enforcement officers observed that Computer-1 had saved to its desktop what appeared to a "Google search engine" but when that program was accessed it did not function as a search engine and instead it displayed Phone Number-1. Further, law enforcement officers did not identify any services performed on Computer-1 consistent with what was represented would be done to Victim-1.

          ii. Based on bank records, I have learned that Check-1 was deposited into a bank account associated with "22nd Century" ("22nd Century Bank Account"). The memo line of Check-1 reads "computer security." Surveillance video, which I have reviewed, captured the image of the individual who deposited Check-1 into the 22nd Century Bank Account, who I know

4

as GURJEET SINGH, the defendant.[1]

        b.    In or about October 2017, Victim-2 received a telephone call from an individual claiming to be from a well-known technology company with an international presence ("Tech Company-2"). That individual claimed that Victim-2 had a virus on their computer and needed to download a program which would provide the caller access to Victim-2's computer so that it could be repaired. The caller stated that they would also make Victim-2's computer faster and that the charge to have the virus removed and for three years of services was $400, which Victim-2 paid by providing the caller Victim-2's credit card number.

        i.    Based on my review of records from Victim-2's credit card company, I have learned that in or around October 2017, Victim-2 paid $400 to a company known as "Seasia Consulting Inc."

        c.    Victim-3 reported to law enforcement officers that in or about August 2017, he received a call from an individual who claimed to work for a particular "tech" company. The caller told Victim-3 that Victim-3 was "hacked by Russians" and, as a result, his computer had "multiple viruses." The caller instructed Victim-3 to download particular software so that the caller could repair Victim-3's computer. The caller further offered Victim-3 several service plan options for additional protection. Victim-3 selected a three year plan which he told law enforcement officers that he intended to pay for with his credit card, however, Vicitm-3 believed he instead paid for the caller with Apple gift cards.

        i.    Based on my review of records from Victim-3's credit card company, I have learned that in or about August 2017, Victim-3 paid approximately $225 to "Seasia Consulting Inc."

        d.    Victim-4 reported to law enforcement officers that in or about October 2018, she received several suspicious calls from individuals claiming to be from a national bank ("Bank-1") and Tech Company-2. Concerned there may be a problem with her computer, Victim-4 told law enforcement officers she "Googled" Tech Company-2 and called a particular number that displayed on her computer. The individual purportedly from

---

[1] As explained, *infra*, I have interviewed SINGH and I also am familiar with SINGH's appearance from photographs associated with him that are accessible to law enforcement officers.

Microsoft then took control over Victim-4's computer and purported to repair it. The individual then offered Victim-4 several service plans of which Victim-4 selected a five-year service plan for $399. Victim-4 was instructed to pay for the service plan by writing a check to "NY Software Solution," which Carrier-1 would then pick-up. Victim-4 wrote such a check ("Check-4") and Carrier-1 retrieved it.

        i. Based on my review of bank records, I have learned that Check-4 was written in the amount of approximately $419 and was deposited into a bank account associated with "NY Software Solutions Inc." ("NY Software Solutions Bank Account-2"). The memo line of Check-4 reads "security and support." Bank records further indicate that JAS PAL, the defendant, endorsed Check-4 and bank surveillance footage demonstrates that an individual I know to be GUNJIT MALHOTRA, the defendant,[2] deposited Check-4.

        e. Victim-5 reported to law enforcement officers, that in or about November 2018, he experienced trouble with his America Online Account and ultimately called a number Victim-5 understood was for Tech Company-2. Victim-5 informed law enforcement officers that the individual from Tech Company-2 mentioned "network security support," "[Tech Company-1] firewall security," and took remote control over Vicitm-5's computer. Vicitm-5 then selected a five year service plan which he paid for via check ("Check-5") made payable to "NY Software Solution." Victim-5 reported that Check-5 was retrieved by Carrier-1 in or around November 2018. Victim-5 informed law enforcement officers that he believed the services he paid for were legitimate.

        i. Based on my review of bank records, I have learned that Check-5 was written in the amount of approximately $299 and was deposited into the NY Software Solution Bank Account. The memo line of Check-5 reads "5 year Standard Microsoft." Check-5 is endorsed by PAL and bank surveillance footage demonstrates that an individual I know to be PAL, deposited Check-5.[3]

---

[2] I am familiar with MALHOTRA's appearance from photographs associated with him available to law enforcement officers as well as from surveillance conducted on him.

[3] As explained, *infra*, I have met PAL and I also am familiar with PAL's appearance from photographs associated with him that are accessible to law enforcement officers.

    f. Victim-6 reported to law enforcement officers, that on or about November 20, 2018, his computer froze, a message appeared on his screen indicating his computer had a virus and he should call a particular number. Victim-6 called that number and a technician remotely controlled his computer and purported to repair it. To pay for this work Victim-6 wrote a check to "NY Software Solutions" in the amount of approximately $350 ("Check-6"), which he stated was retrieved from his residence in the Bronx, New York by Carrier-1.

    g. Victim-7 reported to law enforcement officers that she resides in New York, New York but did not recall sending any payments via Carrier-1. Victim-7 referred law enforcement officers to her son who handles Victim-7's business affairs. Victim-7's son informed law enforcement officers that Victim-7 is elderly and forgetful and that her bank records indicate that in or around November 2018 Victim-7 sent a payment via check ("Check-7") in the amount of approximately $399.99 to "Macwin Technologies Corporation."

    i. Based on records from Carrier-1, I have learned that a package was sent from Victim-7's New York, New York address in or around November 2018 to "NY Software Solution" at a particular address ("Address-2").

    h. Victim-8 reported to law enforcement officers, that in or around February 2019, her computer was experiencing problems so she "Googled" Tech Company-2 and found a particular number to call. The man who answered, purportedly from Tech Company-2, offered Victim-8 one of several service plans of which Victim-8 selected the 5 year plan for approximately $799.99. Thereafter someone remotely accessed Vitim-8's computer and purported to fix it. To pay for the services Victim-8 was instructed to send payment by check to "NY Software Solutions" at Address-2 and that the check would be retrieved by Carrier-1.

    i. Based on records from Carrier-1, I have learned that a package was sent from Victim-8's address in or around February 2019 to "NY Software Solution" at Address-2.

    i. Victim-9 reported to law enforcement officers that from in or about April 2018 through in or about February 2019, she engaged in dozens of calls with individuals from "support" who advised Victim-9 that her computer had issues with "network system security," "[Tech Company-2] License" and "networking hardware," among other things. Victim-9 informed

law enforcement officers that technicians from "support" occasionally took control of her computer by remote means. The technicians first advised Victim-9 that payment should be made to "Reussite Technologies," which Victim-9 was told was a subsidiary of "[Tech Company-2]." Thereafter every few weeks individuals would call and advise Victim-9 that there was trouble with her computer including because sometimes "Russians were hacking" her. Victim-9 reported to law enforcement officers that she sent several checks to "support," all of which were picked up by Carrier-1.

    i. Based on my review of bank records associated with Victim-9, I have learned that Victim-9 sent approximately 8 checks to "Reussite Technologies, Inc." for a total amount of approximately $65,810. In addition, Victim-9 sent approximately 10 checks to "NY IT solutions Inc.," "NY IT Technologies Inc.," and NY IT Inc." for a total amount of approximately $70,805.

## Bank Accounts

  10. Based on my review of bank records, documents, surveillance photographs and conversations with law enforcement officers, I have learned the following, among other things:

    a. In or about September 2013, a particular individual ("CC-1") opened the 22 Century Bank Account. As explained above, Check-1 was deposited into the 22 Century Bank Account. From in or about September 2013 through in or about June 2018, the 22 Century Bank Account received approx. 517 deposits totaling $372,500, most of which were personal checks. Further, records indicate that the 22 Century Bank Account transferred approximately $30,942 to JAS PAL, the defendant, as well as approximately $18,840 to a particular bank account (the "Sav IT Bank Account").

    b. In or about September 2016, CC-1 opened a bank account in the name of "Pro Advisor Solutions" ("Pro Advisor Solutions Bank Account"). From in or about September 2016 through in or about December 2018, the Pro Advisor Solutions Bank Account received approximately $406,399 largely from personal checks endorsed by PAL. The Pro Advisor Solutions Bank Account debited $71,555.09 in charge backs and transferred approximately $19,000 to bank accounts associated with an entity in the name of "Reussite."

    c. In or about February 2017, GUNJIT MALHOTRA, the

defendant, and a particular individual ("CC-2"), opened a bank account in the name of NY Software Solutions Inc. ("NY Software Solutions Bank Account-1"). NY Software Solutions Bank Account-1 has received approximately $53,900 in transfers from a particular bank account ("NY Software Solutions Bank Account-2") and approximately $98,500 in transfers from a bank account associated with "FL IT Services Inc." Approximately $240,940 of the $295,322 that NY Software Solutions Bank Account-1 received was sent to bank accounts associated with "Reussite Technologies."

   d. In or about September 2017, GURJEET SINGH, the defendant, opened a bank account in the name of Seasia Consulting Inc. ("Seasia Consulting Bank Account"). The Seasia Consulting Bank Account received approximately $100,500 from bank accounts associated with "NY Software Solutions Inc." and approximately $16,500 from accounts associated with "FL IT Services, Inc."

   e. In or about September 2017, PAL opened the Sav IT Bank Account. The Sav IT Bank account received approximately $508,371 in deposits, the vast majority of which were in the form of personal checks that bore memo lines with "computer repair service," and "[Tech Company-1] security," among other things.

   f. In or about August 2017, MALHOTRA opened another bank account NY Software Solutions Bank Account-2. Check-4 and Check-5 were deposited into the NY Software Solutions Bank Account-2. The NY Software Solutions Bank Account-2 received approximately 866 deposits totaling $599,109, most of which were personal checks. Further, bank records indicate that the NY Software Solutions Bank Account-2 has transferred tens of thousands of dollars to bank accounts associated with entities in the name of "Reussite" and other bank accounts associated with the name "Seasia Consulting."

   g. In or about February 2018, MALHOTRA opened a bank account in the name of Reussite Technologies ("Reussite Technologies Bank Account"). The Reussite Technologies Bank Account received approximately $28,130 from checks associated with Victim-9. In addition, the Reussite Technologies Bank Account received approximately 408 deposits totaling $324,540, most of which were checks.

   h. In or about January 2018, CC-3 opened a bank account in the name of NY IT Solutions ("NY IT Solutions Bank Account"). The NY IT Solutions Bank Account received

9

approximately $41,336 in checks from Victim-9. The NY IT Solutions Bank Account debited approximately $55,301 in charge backs and transferred approximately $115,870 to accounts associated with entities in the name of "Reussite."

        i. Based on an analysis of bank accounts that I believe are associated with the defendants' scheme, law enforcement officers have identified approximately $554,964 transferred to bank accounts located abroad, specifically in India, that are associated with the name "Reussite." In total, law enforcement officers' analysis of bank accounts that I believe are associated with this scheme has identified $1,315,283 transferred to accounts located abroad.

### The Investigation

    11. Based on my review of documents and conversations with law enforcement officers, I have learned the following, among other things.

        a. On or about June 25, 2018, law enforcement officers interviewed GURJEET SINGH, the defendant, at his residence ("Address-1"). SINGH stated, in substance and in part, that he opened "Seasia Consulting Inc." and another company at the direction of GUNJIT MALHOTRA, the defendant. SIGNH explained that he collects checks for MALHOTRA's "IT customers" and then wires the money to MALHOTRA in exchange for an 8% fee.

        b. While law enforcement officers were interviewing SINGH, a Carrier-1 truck delivered an envelope that SINGH opened and it contained a check made payable to "NY IT Solutions, Inc." SINGH further explained that he established an account with Carrier-1 that is associated with his name and a particular email address which has "Seasia" in its username ("Seasia Email Account").

        c. During the interview with SINGH, law enforcement officers observed JAS PAL, the defendant, who also resides at Address-1.

    12. Based on my review of documents from Carrier-1, I have learned that a particular account is associated with GURJEET SINGH, the defendant ("Carrier-1 Account").

        a. The Carrier-1 Account was opened on or about August 14, 2017. The Carrier-1 Account indicates that it has paid for the shipment of more than 200 hundred parcels from

various individuals across the United States. The Carrier-1 Account indicates that several entities were recipients of those parcels including: "Seasia Consulting," "NY IT Solutions Inc.," "NY Software Solutions, Inc.," and "22nd Century ITC."

  b. Carrier-1 records further indicate that from on or about August 14, 2017 up through and including on or about October 13, 2018, the majority of the parcels associated with the Carrier-1 Account were sent to Address-1. Thereafter, the majority of the parcels associated with Carrier-1 Account were sent to Address-2.

  c. Check-4, Check-5, Check-6, Check-7, Check-8 and several checks sent by Victim-9 were sent in parcels paid for by the Carrier-1 Account.

13. Based on my review of records from a commercial mail receiving agency, and my conversations with law enforcement enforcers, I have learned the following, among other things.

  a. On or about September 21, 2018, GUNJIT MALHOTRA, the defendant, opened a mailbox located at Address-2.[4] The application form for Address-2 indicated that mail will be received in the name of "NY Software Solutions Inc." and "Reussite Technologies, Inc."

  b. MALHOTRA also provided to the commercial mail receiving agency what purports to be a certificate indicating that MALHOTRA owns 100 shares of Reussite Technologies, Inc. That certificate is dated on or about August 9, 2017.

    i. Based on my review of publically available information Reussite Technologies Inc. was registered as a corporation with the state of New York on or about August 9, 2017.

14. Based on my review of documents returned pursuant to a judicially authorized search warrant on the Seasia Email Account, I have learned the following, among other things.

  a. On or about August 28, 2017, an email address associated with Victim-3 sent the following message to the Seasia Email Account:

---

[4] The mailbox is numbered "10," however parcels from Carrier-1 sent to Address-2 are identified as "Suite 10" rather than "mailbox 10."

11

> Hi. This is [Victim-3], I have made a payment of $225.00 to SEASIA CONSULTING INC for my Computer support. I have paid through my master card ending with [redacted]. I understand it is a third party Independent company. I will not ask any refund or charge back for this transaction. I am happy with this services. Thanks and Regards [Victim-3].

      b. On or about September 6, 2017, Victim-3 replied to the above email he purportedly sent the Seasia Email Account and stated, in substance and in part "I didn't send this nor was I shown it. This is the first time I have heard of SEASIA Consulting." Later in that email chain Victim-3 wrote that he spoke with a particular individual ("CC-4") and was now "OK."

      c. Based on my review of the content of the Seasia Email Account, there are approximately 10 emails with text similar to the August 28, 2017 email sent from Victim-3's email account. For example, on or about October 10, 2017, an email account associated with Victim-2 sent the following email to the Seasia Email Account:

> Hi. I, [Victim-2] have authorized a one time payment in the name of SEASIA CONSULTING INC with discover card ending with [redacted] and amount is $400.00. I understand it's a one time charge for my computer repair and I understand SEASIA CONSULTING INC is a third party Independent company, It's not associated with [Tech Company-2]. I am aware of that charge which I made to company and I am happy with the services. Regards [Vicitm-2].

      d. When interviewed by law enforcement officers, Victim-2 denied sending the email described above.

      e. The Seasia Email Account is registered in the name of GURJEET SINGH, the defendant, and lists as its recovery email a particular email address ("Singh Email Account-1"), which, based on my review of its contents pursuant to a judicially authorized search warrant appears to be SINGH's personal email account.

      f. IP history information associated with the Seasia Email Account indicates that it has been accessed from locations in Queens, New York (where Address-1 is located), India, and a location in upstate New York (where I have learned SINGH attends college).

12

15. Based on records maintained the Department of State I learned that GUNJIT MALHOTRA, the defendant, is a national of India and primarily resides there, although he occasionally visits the United States.

16. Based on my review of documents and conversations with law enforcement officers, I have learned the following, among other things:

    a. Law enforcement officers conducting surveillance have observed JAS PAL, the defendant, retrieve parcels from Address-2 on several occasions including on October 26, 2018, November 1, 2018 and November 21, 2018.

    b. On or about May 20, 2019, law enforcement officers observed GUNJIT MALHOTRA, the defendant, enter a particular bank in Queens, New York. Thereafter, law enforcement officers interviewed the bank teller and learned that MALHOTRA held approximately five accounts at that bank and that on that date requested from the bank copies of all checks that were returned or "bounced" in any of his five bank accounts. The teller further confirmed that MALHOTRA requested that as to one of his bank accounts that the address associated with it be changed to Address-1.

17. Based on an email in the Singh Email Account-1, law enforcement officers learned that in or about September 2017 GURJEET SINGH, the defendant, applied for a particular internship with a company that requires its interns obtain security clearance. In connection therewith, SINGH, completed a background questionnaire, which was signed under the penalty of perjury and filed with the United States Government in or about January 2019. On that questionnaire, an official copy of which I have reviewed, although SINGH was required to list all employment and ownership affiliations, SINGH did not list "Seasia." Nor did SINGH indicate an affiliation with GUNJIT MALHOTRA, the defendant, even though the questionnaire prompted SINGH to lists all foreign nationals with whom SINGH has close or continuing contact.

WHEREFORE, the deponent respectfully requests that arrest warrants be issued for GUNJIT MALHOTRA, GURJEET SINGH, and JAS PAL, the defendants, and that they be arrested and imprisoned, or bailed, as the case may be.

CARIE JELENIEWSKI
Special Agent
Federal Bureau of Investigation

Sworn to before me this
22nd day of May 2019

HONORABLE DEBRA FREEMAN
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK