ALEXEI SCHACHT
ATTORNEY AT LAW
123 WEST 94TH STREET
NEW YORK, NEW YORK 10025
TEL: (646) 729-8180
FAX: (212) 504-8341
alexei@schachtlaw.net
www.schachtlaw.net

June 12, 2021

*BY ECF*
The Honorable Andrew L. Carter
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

    **Re:**    United States v. Gunjit Malhotra
            19 Cr. 411 (ALC)

Dear Judge Carter:

    I write on behalf of Gunjit Malhotra in response to the letter submitted by counsel for Jas Pal (docket entry number 100).

    At the outset, it bears repeating that Mr. Malhotra accepts responsibility for his criminal conduct and he does so without reservation. He stands by his guilty plea allocution and the plea agreement he signed with the Government. Jas Pal's letter actually presents no response whatsoever to the detailed and specific evidence presented by us, including documentary evidence concerning the multiple companies run by Pal for the purpose of laundering the proceeds of fraudulent activity. Rather, that letter just calls our arguments "absurd" in the hope that that will suffice. It will not.

    The reason why the issue of Jas Pal's culpability (and that of his son Gurjeet Singh and Pal's wife Karamvir Kaur) is important is that the Court must consider co-conspirators' relative culpability and sentence defendants fairly, each in comparison to the other. That is all we seek in this case – that the Government and the Court treat Mr. Malhotra fairly in comparison to his co-conspirators. In that vein, I imagine that the Government's response to this letter will not *specifically* deny any of the clear facts we present.

    What are the basic facts? Mr. Malhotra was recruited into a conspiracy by Tanuj Attri, the real ultimate leader in this case. Mr. Attri had an illegal business doing "pop-up fraud"; he was based in India. Attri was the one who sent the "pop-ups" to people who browsed cooking and gambling websites and which some people clicked on; some of them eventually became victims of the fraud

when tricked into paying for unnecessary or non-existent services. As I have mentioned before, it was reasonable to guess that more elderly people would respond to these pop-ups and be tricked into responding to them than would younger savvier internet users. And while the defendant and Jas Pal and Gurjeet Singh did not *personally* target any victims at all, my client accepts this Guidelines adjustment because it was reasonable to assume that there might be a disproportionate number of vulnerable victims. In Jas Pal's plea allocution he lied and denied even knowing that any fraud at all was happening when he first met my client, let alone that there might be vulnerable victims.

What was Mr. Malhotra's role? Because the victims paid by check, these checks needed to be sent to an American address for deposit into an American bank. So, on July 31, 2017, my client came to the United States to help Attri to arrange to have these checks deposited into an American bank so that most of the money could be sent back to India.

In early August of 2017, my client needed help processing the checks in the United States; after telling a mutual acquaintance what he needed, that acquaintance introduced Malhotra to Jas Pal who was already in the fraud business. Specifically, Jas Pal and his family were actually money launderers; indeed, that was really their and Gunjit Malhotra's role, rather than dealing very much with any victims, or sending out "pop ups," they mainly deposited checks and sent most of the money to India. The evidence for this is plain and is in the discovery.

Before ever meting the defendant, Jas Pal and his wife Karamvir Kaur and their son Gurjeet Singh set up companies that purported to be in the information technology or IT business but were in reality simply bank accounts used for depositing checks from defrauded victims so that the money could then be taken by the fraudsters. In other words, they laundered the proceeds of fraud crimes. This is why my client was referred to Mr. Pal. Jas Pal had the chance to deny this and sent in a one-page letter with a *pro forma* denial and asking the Court to be lenient to my client.

My client recruited Jas Pal but he in turn had *already* recruited his wife and son and several other people – and they were all experienced and knowledgeable money launderers before meeting Mr. Malhotra. It is worth noting at this point that, as shown in detail below, Jas Pal's wife is deeply implicated in this criminal conduct and is not being prosecuted at all! So in comparison to her, my client should certainly receive a sentence of time served.

Let us look at a small sampling of the voluminous evidence for these assertions. Exhibit A are the formation forms and bank account opening paperwork for PRO ADVISOR SOLUTIONS INC which show that Ms. Kaur was the "President" of the company. There is another coconspirator named GURDEV SINGH who is also listed in that paperwork. This paperwork is from 2016, at least a year before they met my client. Please recall that Mr. Pal and his wife present themselves in Court as a taxi driver and house wife.

Exhibit B (made in 2015, 2016, and 2017) is from CONFLUENT IT SYSTEMS INC. which also lists GURJEET SINGH and another coconspirator BALWINDER SINGH as bank account signers. In his letter and plea allocution, Jas Pal is described as a simple taxi driver with a ninth-grade education who had no idea what being a bank account co-signer meant (plea allocution at page 19), until he met my client. In fact, he is a co-signer with his wife and several other unapprended but

identified money launderers and was for years before meeting Malhotra.[1] To repeat, Jas Pal recruited his wife, son and several other people to help him launder money and this all occurred prior to meeting my client.

SAV IT INC is yet another company made by Jas Pal in 2015, in which his wife Ms. Kaur was the bank's main contact and for which they told the bank they were in the "Computer Systems Design Services" business (Exhibit C). This was obviously a lie. SAV IT INC figures prominently in the charged fraud here (*see* paragraph 38 of the Probation Report) and was formed to commit fraud by Pal and his wife years before meeting my client. The never charged nor arrested Ms. Kaur started yet another business for "IT Repair" with a slightly different name of another fraud company she set up; this one is CONFLUENT IT REPAIR (Exhibit D). That was formed in 2015, two years before meeting my client.

Now what did Jas Pal and his family do with the numerous bank accounts they set up before meeting my client. The discovery in the case contains evidence of years of Jas Pal and his family's money laundering. Exhibit E, which I submit under seal because it contains victims' information and names, is about 700 pages worth of check deposits from victims in the CONFLUENT IT SYSTEMS bank account. The total value of the checks in just this one account from <u>BEFORE</u> Jas Pal and his family met my client is over $700,000. And that is just one account.

All of their bank accounts are not contained in the discovery and I am not including other accounts that are in the discovery and to which I do not have access. But I imagine if the other companies contain even a fraction of the stolen money laundered through Ms. Kaur's CONFLUENT IT SYSTEMS account then there may be millions of dollars laundered by Jas Pal and his family before they met my client. Indeed, this is a good time to point out that Mr. Malhotra has not even objected to the inclusion of this approximately $700,000 in his loss calculation even though it is for money stolen before he met Jas Pal. But we do ask that for sentence purposes he be treated fairly. It is inexplicable that Jas Pal's restitution amount, as per his plea allocution, is only $1,150,838 (page 16) and my client's is $3,134,804 (Probation Report at paragraph 148). All the loss amounts attributed to my client were sent through accounts controlled by Pal and his wife and son and in addition they laundered fraud proceeds before meeting my client that are also being attributed to my client but seemingly not to them! Last, Ms. Kaur, the actual owner and manager of the CONFLUENT account was not even arrested and now lives in her million-dollar home here in New York City.

What happened to the stolen money? Much of it appears to have gone into Jas Pal and his wife's pockets. Exhibit F shows cash withdrawals in the many thousands of dollars from *before* they met my client and the cash is taken out mainly by Karamvir Kaur. If she gets a free pass surely my client deserves time served. Exhibit G shows a check from another fraud-linked account run by Jas Pal and Karamvir Kaur made out to my client for $2000 and signed by Ms. Kaur. In other words, she conspired directly with my client. There is also a check signed by Kaur and made out to Jas Pal for $1595. There is also another check for $300 to open a new fraud account called 22nd CENTURY IT. These are simply examples of the pattern.

---

[1] Gurdev and Balwinder Singh are signers on some of these accounts which were used for nothing but money laundering fraud proceeds and my client believes but is uncertain that they are relatives of Jas Pal and his wife and son. It appears that they were also not arrested.

The point of all of this evidence is that the defendants are not mere "mules," as described by the Government (docket entry number 94). They are long-term sophisticated money launderers who are unrepentant. Mr. Pal lies in Court proceedings. Jas Pal and his family made more money from the fraud than my client (see docket entry number 76 at page 5). They generally made about a 10% fee while my client made only 3% since he was an intermediary and they did most of the actual work. Part of what they did with this money is they supported their relatively lavish lifestyle. Jas Pal owns a million-dollar building out of which the money laundering scheme operated. When my client came to New York to participate in committing this crime he usually stayed with Jas Pal's family at their million-dollar home committing the fraud together. Jas Pal also owns a valuable condominium in Queens near the two-family building he owns. They used proceeds of the fraud to own and maintain these properties.

An example is seen in Exhibit H which shows a check for condominium maintenance fees paid by Ms. Kaur right out of one of the fraud accounts, SEASIA CONSULTING. The same exhibit Shows that their son, Gurjeet Singh had authority to write himself a check for $1312.52 to take some crime proceeds for himself. There is also a check for "office expenses" that Ms. Kaur wrote to herself for $2540. "Mules" in the context of criminal schemes are low-paid workers without agency. The Jas Pal family ran a stand-alone professional money laundering operation who would normally be characterized as "sophisticated" by prosecutors in this District. That my client gave them instructions or directions is admitted by us. Malhotra passed along the instructions given to him by the scheme's leader. The biggest money launderers in the world are given instructions by drug owners, for instance; but that does not make them "mules" or minor criminals.

The Government has asked what restitution my client can make. My client has a negative net worth and cannot make any restitution himself. But, as laid out in his probation report (*see* paragraph 150) he has agreed to forfeit his right, if any, to money in many bank accounts connected to the case. I do not know what if any money can be recovered from these accounts. I hope a lot of money. But as I have also suggested, if the Government cares about restitution, Jas Pal can make restitution if the Government seizes his two pieces of property in New York City, both of which were paid for at least in part by fraud proceeds, and one of which was used as a base to commit the crime.

I believe that the sophisticated but perhaps not formally educated Jas Pal is worried about this and that is why he has risked violating the terms of his bail. What do I mean? His bail bond (Exhibit I[with highlight added]) says "I Will not sell the property, allow further claims to be made against it, or do anything to reduce its value while this appearance bond is in effect." But less than a month after pleading guilty he added his wife to the deed (Exhibit J). As shown above, she is lucky to have not been indicted but she is trying to shield the proceeds of their crime by adding her name to their building.

To repeat what should be obvious: my client accepts that he participated in a serious fraud, that many victims were older people, that he recruited experienced money launderers to help in the scheme and that he passed along instructions to them from the conspiracy leader as to what to do with the money. Mr. Malhotra has not made false statements to the Court. He deserves punishment and has been harshly punished at the MCC for over two years during what has been the hardest time to be there, locked down for much of that time. By comparison, Karamvir Kaur has not even been

arrested; Gurjeet Singh is headed for a likely dismissal of the charges and Jas Pal was permitted to plead guilty to a maximum 5-year charge and to keep the proceeds of his crimes that he invested in his New York real estate holdings. Therefore, in this context, Gunjit Malhotra should receive a sentence of time served.

    As always, thank you for your attention to this case.

Very truly yours,

Alexei Schacht

cc:    United States Attorney's Office